UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAURENCE ROSENBERG and KELLY M. BROWN, individually and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>vs.<br><br>BIOREFERENCE LABORATORIES, INC.,<br><br>             Defendant. | Case No.  3:22-cv-2321<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Laurence Rosenberg and Kelly M. Brown, on behalf of themselves and all others similarly situated, by and through their attorneys, The Law Office of Christopher Q. Davis, PLLC, allege upon knowledge, and information and belief, as follows:

**NATURE OF ACTION**

1.     This is a collective and class action brought by Plaintiffs and Putative Class Representatives Laurence Rosenberg ("Rosenberg") and Kelly M. Brown ("Brown") (collectively the "Representative Plaintiffs") and all putative plaintiffs (collectively, "Plaintiffs"), on their own behalf and on behalf of the proposed collective and class identified below. Representative Plaintiffs and the Putative Class and Collective members are or were employed by Defendant BioReference Laboratories, Inc. ("BioReference" or "Defendant") as "Cruise Swabbers," "Swabbers," and "Team Leads" on Royal Caribbean Group cruises.  Defendant classified Plaintiffs as non-exempt, hourly paid employees. Representative Plaintiffs and the Putative Class and Collective members were not paid for all of their hours worked, not paid all earned overtime premiums, subjected to improper deductions from wages, issued noncompliant wage statements, and suffered other damages as a

1

result of Defendant's unlawful policies and practices which included requiring Plaintiff and the Putative Class and Collective members to work "off the clock," failing to pay Plaintiffs for all compensable time, time shaving and other unlawful policies.

2.      Defendant contracts with cruise ship operators to provide personnel to perform tests to detect COVID-19.

3.      BioReference employed the Plaintiffs to provide Point of Care services in Defendant's Passenger Department and assigned the Plaintiffs to the Contracted Royal Caribbean Group cruise ships to conduct tests of cruise ship crew and passengers boarding or disembarking cruises in the cities of Bayonne, New Jersey; Los Angeles, California; Baltimore, Maryland; Miami, Florida; Fort Lauderdale, Florida; Galveston, Texas; Port Canaveral, Florida; Seattle, Washington; or Tampa, Florida.[1]

4.      The putative Rule 23 Class and Collective Class of employees are similarly situated to the Representative Plaintiffs under Federal Rule of Civil Procedure 23 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and have suffered the same violations pursuant to Defendant's common policies and practices.

5.      Defendant classified all swabbers as either W2 employees or as misclassified "independent contractors".   For all swabbers working for Defendant, including misclassified independent contractors, the conditions of employment were nearly identical.   Defendant set their schedules, compensation and job duties, set all applicable employment policies, controlled all aspects of their day-to-day employment, and supervised their work, making them Defendant's "employees" as that term is defined under all applicable statutes.

---

[1] The contracted RCG cruise ships which Plaintiffs performed labor on as BioReference employees include Oasis of the Seas, Liberty of the Seas, Freedom of the Seas, Millennium of the Seas, Mariner of Seas, Navigator of the Seas, Symphony of the Seas, Independence of the Seas, Serenade of the Seas (the "Contracted RCG Ships").

6.     The Collective Class consists of all persons who are or have been employed (either directly or through outside agencies) by Defendant as "Cruise Swabbers," "Swabbers,"  and "Team Leads" at ports and on Contracted RCG Ships traveling from US ports within the period of three years prior to the filing date of this Complaint (the "Collective Class Period") and who were subject to Defendant's policy of failing to pay overtime premiums for all hours worked over 40 in a given workweek.

7.     The New Jersey Rule 23 Class consists of all persons who are or have been employed (either directly or through outside agencies) by Defendant as "Cruise Swabbers," "Swabbers," and "Team Leads" on Contracted RCG Ships traveling from US ports within the period of six years prior to the filing date of this Complaint (the "New Jersey Class Period")  who were subject to Defendant's policy of failing to timely pay all wages due for all hours worked performing workplace activities in New Jersey, failing to pay overtime premiums for all hours worked over 40 in a given workweek, failure to properly reimburse Plaintiffs for business expenses, and failing to provide accurate wage statements.

8.     The Washington Rule 23 Class consists of all persons who are or have been employed (either directly or through outside agencies) by Defendant as "Cruise Swabbers," "Swabbers," and "Team Leads" on Contracted RCG Ships traveling from US ports within the period of three years prior to the filing date of this Complaint (the "Washington Class Period")  who were subject to Defendant's policy of failing to timely pay all wages due for all hours worked performing workplace activities in Washington, failing to pay overtime premiums for all hours worked over 40 in a given workweek, and failing to provide accurate wage statements.

9.     Plaintiffs seek relief for the Rule 23 Classes pursuant to the applicable provisions of the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56(a) *et seq*. ("NJWHL"); the New Jersey Wage Payment  Law, N.J.S.A. 34:11-4.1, *et seq.* ("NJWPL"); the Washington Labor Standards Act,

RCW 49.46.130(1); related regulations; and for the Collective Class, pursuant to the FLSA, to remedy the Defendant's failure to pay all wages due, in addition to injunctive relief.

## PARTIES

10. Individual and Representative Plaintiff Laurence Rosenberg was employed by BioReference from October 16, 2021, until approximately December 5, 2021. At all relevant times, he worked as a Cruise Swabber or Team Lead.

11. Individual and Representative Plaintiff Kelly M. Brown was employed by BioReference from approximately September 12, 2021, until approximately October 22, 2021.

12. At all relevant times, each of the Representative Plaintiffs were "employees" within the meaning of all relevant statutes.

13. Plaintiff Rosenberg is a resident of the State of New Jersey.

14. Plaintiff Brown is a resident of the State of Florida.

15. Defendant BioReference is a corporation headquartered and incorporated in New Jersey.

16. Plaintiffs were all subject to uniform job descriptions and extended uniform offer letters by Defendant.

17. Plaintiffs did not sign employment agreements or offers of employment with Royal Caribbean Group ("RCG") and were not considered RCG employees.

18. Plaintiffs' immigration classification under US Customs regulations was "Contract Workers" and, as such, they were not considered part of any ships' crew.  Instead, they were classified as passengers.

19. According to the US Customs and Border Patrol Vessel Inspection Guide, Contract Workers are "persons who work on board a vessel but who do not meet the definition of crew because the work they perform while on board the vessel is not required for the normal operation of

the vessel."

20.     As indirectly employed concessionaires, Plaintiffs are not considered seamen under the FLSA and are not subject to any collective bargaining agreements.

21.     All contracted RCG Ships involved in the Class and Collective allegations are flagged under the law of the Bahamas and, at all relevant times, were listed in the Bahamian Registry under the Bahamian Merchant Marine Shipping Act.

22.     The Representative Plaintiffs bring this action on behalf of themselves and similarly situated employees across the United States as a collective action under the FLSA and a Class Action under Rule 23.

23.     At all relevant times, Defendant BioReference has met the definition of the Representative Plaintiffs' "employer" under Section 3(d) of the FLSA, 29 U.S.C. § 203(d); N.J.S.A. 34:11-56a1(g);  N.J.S.A. 34:11-4.1(a);  N.J.S.A. 34:19-2(a); and WA ST 49.46.010(4).

24.     Upon information and belief, Defendant BioReference maintains control, oversight, and direction over their operations and employment practices.

25.     At all times hereinafter mentioned, Defendant BioReference employed employees, including the Representative Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials that have moved in or were produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

26.     Defendant BioReference's gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

27.     At all relevant times, the Representative Plaintiffs worked some portion of each workweek in the United States or on ships docked in ports in the United States.

## JURISDICTION AND VENUE

28.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. This court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332.

29.     In addition, the court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207 *et seq*.

30.     This court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

31.     This Court has supplemental jurisdiction over the claims arising under New Jersey and Washington state law pursuant to 28 U.S.C. § 1367, in that the state law claims are so closely related to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United States Constitution.

32.     This court has personal jurisdiction over Defendant because it routinely transacts business in New Jersey.

33.     Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendant conducts business through their employees, including Plaintiff, within this judicial district.

## WAGE AND HOUR COLLECTIVE CLASS
## AND CLASS ACTION FACTUAL ALLEGATIONS

34.     BioReference contracts with cruise ship operators to provide personnel to perform tests to detect COVID-19.

35.     On June 22, 2021, BioReference issued a press release announcing an agreement with RCG to conduct "a COVID-19 testing program for U.S. based crew and guests who cruise with Royal Caribbean Group, helping provide a safe environment for travelers."

6

36.     BioReference hired Plaintiffs in New Jersey, Washington, and elsewhere and assigned them to work at ports and on cruise ships conducting tests of cruise ship crews and passengers.

37.     Plaintiffs were given cruise assignments on 7-day cruises and generally sailed from Sunday to Sunday.

38.     Plaintiffs reported to a work location at a US port, typically in Cape Liberty, New Jersey; Miami, Florida; or Seattle, Washington, on a Sunday.

39.     Plaintiff Rosenberg sailed from ports in New Jersey on RCG cruises.  As such, his pre-boarding and post-boarding work activities before ship departure took place while the ship was docked in the state of New Jersey.

40.     Plaintiff Brown sailed from ports in Washington state on RCG cruises.  As such, her pre-boarding and post-boarding work activities before ship departure took place while the ship was docked in the state of Washington.

**All Workers in Swabber Positions Were Employees of BioReference**

41.     BioReference hired Representative Plaintiff Rosenberg directly and treated him as an hourly paid, W2 employee.

42.     BioReference hired Representative Plaintiff Brown through a staffing agency known as All Medical Personnel, Inc. and treated her as an hourly paid 1099 contractor.

43.     BioReference hired other Plaintiffs through All Medical Personnel, Inc., and other staffing agencies including JPI and Medix.

44.     BioReference controlled all aspects of the Plaintiffs' employment.

45.     BioReference paid all Plaintiffs on an hourly basis.

46.     BioReference Managers in New Jersey and other locations in the US supervised all Plaintiffs.

47.     All Plaintiffs indirectly reported to Beth Mazzella, National Director of Point of Care.

48.     Representative Plaintiff Rosenberg reported directly to Regional Manager Christine Budowski.

49.     BioReference Managers controlled the manner in which BioReference paid the Plaintiffs.

50.     Plaintiffs, whether they were hired directly or through a staffing agency, held the job titles "Cruise Swabber," "Swabber," and "Team Lead."

51.     The individuals that BioReference hired directly, and the individuals that BioReference hired through agencies, were interchangeable.   BioReference regularly hired "contractors" who had identical responsibilities to W2 employees in the same titles.   BioReference also converted many 1099 contractors to BioReference employees who performed the same duties, in the same titles, and under the same policies and Managers.

52.     BioReference had, and exercised, the authority to hire all Plaintiffs.

53.     BioReference had, and exercised, the authority to terminate the employment of all Plaintiffs.

54.     BioReference established all policies applicable to Plaintiffs, including the unlawful policies that impacted all Plaintiffs in the same manner.

55.     BioReference maintained all time records for Plaintiffs.

56.     BioReference Managers trained and directed all Plaintiffs.

57.     BioReference set the Plaintiffs' work hours and work locations.

58.     As a result, all Plaintiffs were employees of BioReference.

59.     The pay stubs that were provided to certain Plaintiffs include BioReference's New Jersey address.

**BioReference's Common, Unlawful Policies and Practices Damaged All Plaintiffs**

### *BioReference Required Plaintiffs to Work "Off The Clock"*

60.     Defendant regularly required Plaintiffs to work "off the clock."

61.     Defendant maintained policies that resulted in Plaintiffs not being paid for compensable time during the continuous workday.

62.     Defendant did not pay for mandatory travel time and waiting time at the start of cruises and did not pay Plaintiffs for all hours worked on the first day they were required to report to a cruise.

63.     Plaintiffs were required to attend a mandatory staff meeting at the start of a cruise, usually at 6:00 PM.

64.     Defendant did not pay Plaintiffs for some of the travel and waiting time before the mandatory staff meeting.

65.     Defendant paid Plaintiffs for time to travel to their assigned cruise ship, complete the passenger check in process and unpack in their rooms.

66.     While Defendant paid for travel time up to the time a Plaintiff unpacked, it did not pay Plaintiffs for the time after they unpacked up to the time of the mandatory staff meeting.

67.     In fact, Plaintiffs were required to arrive no later than 2.5 hours before the mandatory staff meeting so they could assist with work on the docked ship and to ensure Plaintiffs would be on the ship before most passengers boarded and avoid missing departure.  For instance, on December 12, 2021, the Ship Liaison for the Oasis of the Seas, the cruise ship Representative Plaintiff Rosenberg worked on, sent a WhatsApp message stating, "Everyone should be on no later then 3:30."

68.     According to the Swabber job description and BioReference policies, Plaintiffs were required to abide by Centers for Disease Control (CDC) and Occupational Safety and Health

Administration (OSHA) regulations and guidance regarding Point of Care testing and safety requirements for COVID-19 testing sites.

69.     According to CDC and OSHA regulations and guidance at the time, Plaintiffs were expected to wear well-fitting cloth masks, facemasks, or respirators at all times while at the point-of-care site where the testing was being performed.

70.     RCG also required Plaintiffs to abide by these same regulations, and their policies separately required that Plaintiffs wear well-fitting cloth masks, facemasks, or respirators in public areas while on board the cruise ship.

71.     All testing took place in the port or on board the cruise ship.  As such, once Plaintiffs were on the cruise ship, they were required under Defendant's and RCG's policies to wear cloth masks in all public areas.

72.     Plaintiffs were also required to "log in to the [whatsapp] chats" to provide information on their arrival to the BioReference Ship Liaison and colleagues, including room numbers and other planning information.

73.     Defendant maintained a policy of not paying Plaintiffs for this compensable pre-boarding and post-boarding time spent performing compensable activities during the continuous workday before the mandatory staff meeting.

74.     By way of further example, during cruises, Defendant maintained a policy of scheduling Plaintiffs for a one hour unpaid meal break but requiring them to return to work after forty-five minutes to perform compensable work such as donning protective gear and making other preparations so that they could begin performing tests immediately when they were "on the clock." Plaintiffs were not compensated for at least fifteen minutes on every shift because of this policy.

75.     BioReference's timesheets and timekeeping system did not provide Plaintiffs with means or a method to record the amount of time worked during the meal periods.

10

76.     Plaintiffs were required to answer telephone calls and messages and perform administrative paperwork while they were "off the clock."

77.     BioReference did not provide Plaintiffs with means or a method to record the amount of time worked while they were "off the clock."

78.     BioReference also paid employees late and only after multiple complaints.

79.     BioReference's regional (including Area Manager Twanna Mason) and national managers were made aware of the unlawful "off the clock" work by Representative Plaintiff Rosenberg and others who complained via email and video conference meetings of the fact that they were not being paid for all of the time they worked.

80.     While a Lead, Representative Plaintiff Rosenberg complained multiple times about unpaid wages on behalf of other swabbers.

### BioReference Failed to Pay Plaintiffs for "On Call" Time

81.     BioReference often engaged Plaintiffs to wait for work while they were on cruises.

82.     BioReference required Plaintiffs to be "on call" during times they were on the cruise ship.

83.     BioReference required Representative Plaintiff Rosenberg to carry a "ship phone."

84.     Representative Plaintiff Rosenberg was repeatedly required to perform work-related tasks while he was off the clock.

85.     When Representative Plaintiff Rosenberg was "on call," on the cruise ship, he could not effectively use that time for his own purposes.

86.     While he was "on call" Representative Plaintiff Rosenberg was not allowed to drink alcoholic beverages and was required to answer any inbound calls to the ship phone and respond to whatever request was made of him.

87.     BioReference did not pay Plaintiffs for "on call" time.

11

### *BioReference Regularly Engaged in "Time Shaving"*

88.     BioReference pressured its Managers to reduce compensation paid to Plaintiffs.

89.     BioReference's Managers routinely paid Plaintiffs for less time than they actually worked and reported on their timesheets.

90.     BioReference's Managers routinely modified Plaintiffs' time records to avoid paying Plaintiffs for all hours that they worked.

91.     For example, on December 8 and 9, 2021, Representative Plaintiff Rosenberg performed work at his home in New Jersey at the request of a BioReference Manager. He used a BioReference app to clock in and out on these two days. Rosenberg worked a total of 5 hours and 39 minutes on December 8 and 9, 2021.  BioReference modified Rosenberg's time records so that he was only paid for 3 hours and 52 minutes for December 8 and 9, 2021.

92.     Representative Plaintiff Rosenberg complained to BioReference's Human Resources department (Robert Billings), and multiple BioReference Managers, including Christine Budowski and Amy Bates, about time shaving practices.

### *BioReference Knowingly Underpaid Plaintiffs*

93.     BioReference was aware that it was not paying Plaintiffs for all hours that they worked.  During a Zoom meeting, on October 28, 2021, Representative Plaintiff Rosenberg heard Pam Fugate, a Regional Manager for BioReference state, "I try to pay everyone correctly but it doesn't usually happen."

94.     Representative Plaintiff Rosenberg complained to Frank and Mason about Defendant's failure to pay his wages and those of his subordinates.

95.     When Representative Plaintiff Rosenberg reported to Mason that employees were not being paid correctly, she threatened him.  Specifically, on November 4, 2021, Representative Plaintiff Rosenberg and Mason exchanged the following WhatsApp messages:

```
11/4/21, 16:52 - Larry Rosenberg: I'm slightly worried
that you might loose a good employee. I know that payroll
isnt you.  From the sounds of its very large amount of
money owed and keeps getting run around and additional
mistakes. I'm not trying to get in middle of anything but
would hate to see her leave.

11/4/21, 16:53 - twana Mason - Bioreference: Who and what
is the issue

11/4/21, 16:55 - Larry Rosenberg: V (desiree )  like
hundreds of dollars missing she been going back and forth
with payroll and pam via email.

11/4/21, 16:55 - Larry Rosenberg: And was supposed to be
corrected and still hasnt been corrected

11/4/21, 16:57 - twana Mason - Bioreference: So my advise
to you is to stay out of it. You are on the leadership
track and being in the middle of someone else's issues is
a sure way to get off that track. Let her handle that
with Pam. I will speak to Pam to see if there is anything
I can do to help, but please stay don't get involved
[emphasis added]

11/4/21, 17:00 - Larry Rosenberg: I understand
```

***Defendant Failed to Reimburse Expenses***

96.     BioReference stated that it would reimburse Plaintiffs' work-related expenses.

97.     BioReference routinely failed to reimburse Plaintiffs for expenses that they were required to incur in order to perform their jobs.

98.     Plaintiffs were forced to incur transportation related expenses, including the cost to take car services from airports to ports, that were not reimbursed, or were reimbursed after significant delay.

99.     Plaintiffs were forced to pay airline baggage fees that were that were not reimbursed or were reimbursed after significant delay.

100.    Plaintiffs were forced to pay fees charged by RCG related to data/internet usage that were not reimbursed or were reimbursed after significant delay.

101.    Plaintiffs were forced to incur the cost of room service at times when they could not take time away from their job duties to eat free meals, and those expenses were not reimbursed.

### *As a Result of Defendant's Policies, Plaintiffs Were Not Paid Overtime for All Hours Worked Over Forty in a Workweek*

102.    Plaintiffs routinely worked in excess of seventy hours during a workweek but were paid far less than the amounts they were due because of the policies and practices discussed above.

103.    By way of example, Representative Plaintiff Rosenberg was paid for 20.73 hours of overtime for the period from November 13, 2021, to November 26, 2021. During the two workweeks included in this pay period, Rosenberg should have been paid additional overtime premiums, including for compensable time on the first day of cruises that was not paid, time that was not paid for meal periods during which Rosenberg was required to work, and on-call time.

104.    By way of further example, Representative Plaintiff Rosenberg was paid for 24.95 hours of overtime for the period from November 27, 2021, to December 10, 2021. During the two workweeks included in this pay period, Rosenberg should have been paid additional overtime premiums, including for compensable time on the first day of cruises that was not paid, time that was not paid for meal periods during which Rosenberg was required to work, and on-call time.

### **FLSA COLLECTIVE ACTION ALLEGATIONS**

105.    Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

106.    Defendant employed Plaintiffs during the Collective Class Period.

107.    Defendant classified Plaintiffs and Members of the Collective Class as non-exempt for the purposes of the FLSA, paying them an hourly wage.

108.    Upon information and belief, there are more than 40 Cruise Swabbers, Swabbers and Team Leads similarly situated to the Representative Plaintiffs who were denied overtime compensation.

109.    The Representative Plaintiffs represent other Cruise Swabbers, Swabbers and Team Leads and are acting on behalf of Defendant's current and former Cruise Swabbers, Swabbers and Team Leads' interests, as well as their own interests in bringing this action.

110.    Defendant unlawfully forced Plaintiffs and all individuals employed as Cruise Swabbers, Swabbers and Team Leads to work off the clock.

111.    At all times during the Collective Class Period, Defendant, as a matter of common policy and/or practice, has not paid Plaintiffs lawful overtime premiums for all hours worked in excess of 40 hours in a work week.

112.    The Representative Plaintiffs seek to proceed as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of themselves and the following class of persons:

**Collective Class:** All individuals employed by Defendant on Contracted RCG Ships as Cruise Swabbers, Swabbers and Team Leads traveling from US ports on cruise ships at any point during the Collective Class Period who earned but were not paid lawful FLSA overtime premiums for hours worked over 40 in a work week.

113.    Specifically, the Collective Class is further defined as involving claims for unpaid overtime compensation for Defendant's practices of forcing Plaintiffs to work "off the clock," engaging in "time shaving," and requiring Plaintiffs to be "on call" without compensation.

114.    As such, the Representative Plaintiffs and the Collective Class suffered damages for unpaid earned overtime wages under the FLSA in each of the weeks they worked during the Collective Class Period.

115.    Defendant was aware or should have been aware that the law required it to pay non-exempt employees, including the Representative Plaintiffs and the Collective Class, an overtime

premium of 1 and ½ times their regular rate of pay for all work-hours Defendant suffered or permitted them to work in excess of 40 per workweek.

116.     Defendant's conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to the Representative Plaintiffs and the Collective Class.

## FEDERAL RULE OF CIVIL PROCEDURE
## RULE 23 NEW JERSEY CLASS ALLEGATIONS

117.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

118.     The Representative Plaintiffs seeks to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined Class:

> **Proposed New Jersey Class:** All individuals employed by Defendant on Contracted RCG Ships as Cruise Swabbers, Swabbers and Team Leads traveling from US ports and originating from New Jersey locations, for the sake of mandatory travel, and who were paid and managed from New Jersey at any point during the Class Period who earned but were not paid lawful overtime premiums for hours worked over 40 in a work week, or were not paid the full amount of wages due to them at least twice during each calendar month, on regular paydays and who were not issued accurate wage statements, based on the practices alleged herein.

119.     Specifically, the New Jersey Class is further defined as involving: (i) claims for unpaid overtime for Defendant's practice of forcing Plaintiffs to work "off the clock,"  Defendant's practice of "time shaving," and Defendant's policy of requiring Plaintiffs to be "on call" without compensation; and (ii) claims for failure to pay the full amount of wages due to Plaintiffs at least twice during each calendar month, on regular paydays; (iii) claims for wage statement violations for Defendant's failure to provide Plaintiffs with accurate wage statements on each payday that included the information required by the NJWPL, including the correct number of hours worked during the pay period.

120.     Further, Defendant have violated the NJWHL (N.J.S.A. 34:11-56a(4)) by failing to pay Plaintiffs and the putative Class at least one and one-half times their regular rate of pay for all

16

hours worked over 40 during the class period pursuant to the same illegal practices and policies alleged above.

## FEDERAL RULE OF CIVIL PROCEDURE
## RULE 23 WASHINGTON CLASS ALLEGATIONS

121.    Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

122.    The Representative Plaintiffs seek to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined Class:

> **Proposed Washington Class:** All individuals employed by Defendant on Contracted RCG Ships as Cruise Swabbers, Swabbers and Team Leads, traveling from US ports and originating from locations in Washington State, for the sake of mandatory travel, at any point during the Class Period who earned but were not paid lawful overtime premiums for hours worked over 40 in a work week, or were not paid the full amount of wages due to them at least twice during each calendar month, on regular paydays and who were not issued accurate wage statements, based on the practices alleged herein.

123.    Specifically, the Washington Class is further defined as involving: (i) claims for unpaid overtime for Defendant's practice of forcing Plaintiffs to work "off the clock," Defendant's practice of "time shaving," and Defendant's policy of requiring Plaintiffs to be "on call" without compensation; and (ii) claims for failure to pay the full amount of wages due to Plaintiffs at least once each calendar month and at termination of employment; and (iii) claims for wage statement violations for Defendant's failure to provide Plaintiffs with accurate wage statements on each payday that included the information required by WAC 296-126-040.

## RULE 23 CLASS ALLEGATIONS

124.    Numerosity: The Proposed New Jersey and Washington Classes are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than 40 Cruise Swabbers, Swabbers and Team Leads similarly situated to the Representative Plaintiffs who were denied overtime compensation and experienced the other violations discussed above.

17

125.     Typicality: The Representative Plaintiffs' claims are typical of those of the Proposed Classes. The Representative Plaintiffs are informed and believe that the Class members were subjected to Defendant's policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages and the failure to keep adequate records.

126.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

127.     Adequacy: The Representative Plaintiffs will fairly and adequately protect the interests of the Proposed Class and have retained counsel experienced in complex class and collective action litigation.

128.     Commonality: Common questions of law and fact exist to all members of the Proposed New Jersey and Washington Classes and predominate over any questions solely affecting individual members of the Proposed New Jersey and Washington Classes, including but not limited to:

a.   Whether Defendant unlawfully failed to pay lawful overtime premiums for all hours worked over 40 in a workweek for those violations stated above;

b.   Whether Defendant unlawfully failed to pay the full amount of wages due to Plaintiffs in the New Jersey and Washington Classes at least twice during each calendar month, on regular paydays;

c.   Whether Defendant failed to provide complete and accurate wage statements;

d.   Whether those violations were pursuant to a common policy or practice applicable to all Class members;

e.   The proper measure of damages sustained by the Proposed New Jersey and Washington Classes; and

f.   Whether Defendant's actions were "willful."

18

129.    The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

130.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Proposed Classes predominate over any questions affecting only individual members of the Proposed Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's common and uniform policies and practices denied the Proposed Classes the wages and wage statements to which they are entitled.  The damages suffered by the individual Proposed Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

131.    Plaintiff intends to send notice to all members of the Proposed Class to the extent required by Rule 23.  The names and addresses of the Proposed Class are available from Defendant.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Unlawful Failure to Pay Overtime Compensation**
**under the Fair Labor Standards Act)**
**(On Behalf of All Plaintiffs)**

132.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

133.    The Representative Plaintiffs consent in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b).  The Representative Plaintiffs' written consent forms are attached hereto.  The

Representative Plaintiffs anticipate that as this case proceeds, other individuals will sign consent forms and join as opt-in plaintiffs.

134.    At all relevant times, Defendant has been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.  At all relevant times, Defendant has employed and continues to employ employees, including the Collective Class members. At all relevant times, upon information and belief, Defendant had gross annual operating revenues in excess of $500,000.00.

135.    The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.

136.    During their employment with Defendant, within the applicable statute of limitations, Plaintiffs worked in excess of forty hours per workweek without lawful overtime compensation.

137.    Defendant willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay the Representative Plaintiffs and Collective Class overtime compensation for all of their hours worked in excess of forty per workweek in violation of 29 U.S.C. § 207.

138.    Also, by failing to accurately record, report, and/or preserve records of hours worked by the Representative Plaintiff and Collective Class, Defendant has failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 20 U.S.C. § 201, *et seq*.

139.    Defendant has failed to make a good faith effort to comply with the FLSA with respect to its compensation of the Representative Plaintiffs and Collective Class.

140.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

141.    Because Defendant's violations of the FLSA were willful, a three-year statute of limitation applies, pursuant to 29 U.S.C. § 255.

142.    The Representative Plaintiffs, on behalf of themselves and the Collective Class, seek to recover from Defendant unpaid overtime wages, liquidated damages, attorneys' fees, costs of the action, and post-judgment interest, as provided by the FLSA, 29 U.S.C. § 216(b).

<u>AS AND FOR A SECOND CAUSE OF ACTION</u>
**(Overtime Violations under the NJWHL)**
**(On Behalf of the New Jersey Class)**

143.    Plaintiff incorporates by reference all the allegations in the preceding paragraphs.

144.    Pursuant to the applicable provisions of N.J.S.A. 34:11-56a(4), Plaintiff and the Class were entitled to overtime wages of one and one-half times their regular hourly rate or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty per week.

145.    Plaintiff and the Class regularly worked in excess of forty hours per week during their employment with Defendant.

146.    Throughout the relevant period, Defendant knowingly failed to pay Plaintiff and the Class overtime wages of one and one-half times their regular hourly rate for all hours worked in excess of forty per week.

147.    As a result of Defendant's violations of the law and failure to pay Plaintiff and the Class the required overtime wages, Plaintiff and the Class have been damaged and are entitled to recover from Defendant all overtime wages due, along with reasonable attorneys' fees, interest, and costs.

148.    As Defendant did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiff and the Class Plaintiffs are entitled to liquidated damages in an amount equal to no less than two-hundred percent of unpaid wages.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Failure to Timely Pay Wages in Violation of the NJWPL)
### (On Behalf of the New Jersey Class)

149.    Plaintiff incorporates by reference all the allegations in the preceding paragraphs.

150.    At all relevant times, Defendant failed to pay Plaintiff and the Class the full amount of wages due to them at least twice during each calendar month, on regular paydays designated in advance, in violation of N.J.S.A. 34:11-4.2.

151.    Defendant also failed to pay Plaintiff and the Class all wages due to them not later than the regular payday for the pay period in which they were terminated, in violation of N.J.S.A. 34:11-4.3.

152.    As a result of Defendant's violations of the law and failure to pay Plaintiff and the Class Plaintiffs all wages due, including overtime wages and other pay, Plaintiff and the Class Plaintiffs have been damaged and are entitled to recover from Defendant all unpaid wages, along with interest and costs.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Failure to Provide Accurate Wage Statements in Violation of the NJWPL)
### (On Behalf of the New Jersey Class)

153.    Plaintiff incorporates by reference all the allegations in the preceding paragraphs.

154.    At all relevant times, Defendant failed to provide accurate and complete wage statements as required by the NJWPL in that the wage statements provided did not include all of the hours actually worked by Plaintiff and the Class.

155.    As a result of Defendant's violations of the law and failure to provide accurate wage statements, Plaintiff and the Class are entitled to recover the penalties specified in the NJWPL.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Improper Deductions from Wages)
### (On Behalf of the New Jersey Class)

156.     Plaintiff incorporates by reference all the allegations in the preceding paragraphs.

157.     N.J.S.A. 34:11-4.4 provides that: "[n]o employer may withhold or divert any portion of an employee's wages unless: (a) [t]he employer is required or empowered to do so by New Jersey or United States Law.

158.     N.J.SA. 34:11-4.4(b) contains subparts number (1) through (11) which identify the legitimate and lawful circumstances under which an employer may withhold or divert sums from their employees' wages.

159.     None of the subparts in N.J.S.A. 34:11-4.4(b) apply to the claims asserted in this Complaint by the Plaintiffs or the NJWHL Class.

160.     Defendant took unlawful deductions from the Plaintiff's and the Class's wages by failing to reimburse the expenses they incurred in connection with their job duties.

161.     The NJWHL creates a private cause of action for employees to sue in court for wages claimed to be due. A claim for wages improperly withheld or diverted wages is a claim for non-payment of wages due for which there is a private cause of action under New Jersey statutory law.


## AS AND FOR A SIXTH CAUSE OF ACTION

### (Overtime Violations under Washington Law)
### (On Behalf of the Washington Class)

162.     Plaintiff incorporates by reference all the allegations in the preceding paragraphs.

163.     Pursuant to the applicable provisions of Washington law, WA St. 49.46.130, Representative Plaintiff Brown and the Washington Class were entitled to overtime wages of one and one-half times their regular hourly rate for all hours worked in excess of forty per week.

164.     Representative Plaintiff Brown and the Washington Class regularly worked in excess of forty hours per week during their employment with Defendant.

165.     Throughout the relevant period, Defendant knowingly failed to pay Representative Plaintiff Brown and the Washington Class overtime wages of one and one-half times their regular hourly rate for all hours worked in excess of forty per week.

166.     As a result of Defendant's violations of the law and failure to pay Representative Plaintiff Brown and the Washington Class the required overtime wages, Representative Plaintiff Brown and the Washington Class have been damaged and are entitled to recover from Defendant all overtime wages due, along with reasonable attorneys' fees, interest, and costs.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(Failure to Timely Pay Wages in Violation of Washington Law)**
**(On Behalf of the Washington Class)**

167.     Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

168.     At all relevant times, Defendant failed to pay Representative Plaintiff Brown and the Washington Class the full amount of wages due to them at least once per month in violation of WAC 296-126-023(3), (4).

169.     Defendant also failed to pay Representative Plaintiff Brown and the Washington Class all wages due to them not later than the regular payday for the pay period in which they were terminated, in violation of RCW 49.48.010.

170.     As a result of Defendant's violations of the law and failure to pay Representative Plaintiff Brown and the Washington Class all wages due, including overtime wages and other pay, Representative Plaintiff Brown and the Washington Class have been damaged and are entitled to recover from Defendant all unpaid wages, along with interest and costs.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Failure to Provide Accurate Wage Statements in Violation of Washington Law)
### (On Behalf of the Washington Class)

171.     Plaintiffs incorporates by reference all the allegations in the preceding paragraphs.

172.     At all relevant times, Defendant failed to provide accurate and complete wage statements as required by WAC 296-126-040 in that the wage statements did not accurately identify the employer of Representative Plaintiff Brown and the Washington Class and did not include all of the hours actually worked by Representative Plaintiff Brown and the Washington Class.

173.     As a result of Defendant's violations of the law and failure to provide accurate wage statements, Representative Plaintiff Brown and the Washington Class are entitled to recover interest, costs and attorneys' fees.


### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.     That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action to the FLSA Collective members. Such notice should inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit, among other things;

B.     That the Court determine that this action may proceed as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

C.     That Defendant is found to have violated the provisions of the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56(a) et seq. ("NJWHL"); the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, et seq. ("NJWPL") as to Plaintiff and the Class;

D.     That Defendant is found to have violated the Federal Fair Labor Standards Act as to Plaintiff and the Collective Class;

E.     An award to the Representative Plaintiff and the Collective Class and Rule 23 Class

Members for the amount of unpaid wages owed, including interest thereon, and penalties, including

liquidated damages, subject to proof at trial;

       F.       That Defendant further be enjoined to cease and desist from unlawful activities in

violation of the FLSA and NYLL;

       G.       That Representative Plaintiff Laurence Rosenberg and his counsel can adequately

represent the interests of the Class as class representative and class counsel, respectively;

       H.       An award of reasonable attorneys' fees and costs pursuant to the NYLL and 29

U.S.C. § 216 and/or other applicable law;

       I.       For such other and further relief, in law or equity, as this Court may deem appropriate

and just; and

       J.       That Defendant's violations are deemed to be willful.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury as to all issues so triable.

DATED:  April 21, 2022
        New York, New York     Respectfully submitted,

        **The Law Office of Christopher Q. Davis, PLLC**

        _____
        Hajar Hasani, Esq.
        Christopher Q. Davis, Esq. (pro hac vice motion forthcoming)
        Brendan Sweeney, Esq. (pro hac vice motion forthcoming)
        Nicholas Bittner, Esq. (pro hac vice motion forthcoming)
        80 Broad Street, Suite 703
        New York, New York 10004
        Telephone: (646) 430-7930

        _Attorneys for Plaintiff and the Proposed Collective and
        Classes_