# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAURENCE ROSENBERG, KELLY M. BROWN, KENNETH CARDARELLE, DEBORAH DESMARAIS, SUAL DOWNES, JASON FAULKNER, ISAIAH JOHNSON, SHIREEN REYAHI, and TRE JUR WILLIAMS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> BIOREFERENCE LABORATORIES, INC., <br><br> Defendant. | Case No. 2:2022-cv-02321 |

**DECLARATION OF BRENDAN SWEENEY IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF COLLECTIVE ACTION FAIR LABOR STANDARDS ACT SETTLEMENT AND RELEASE**

I, Brendan Sweeney, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am a partner at The Law Office of Christopher Q. Davis, PLLC (the "Davis Firm"), attorneys for Plaintiffs Laurence Rosenberg, Kelly M. Brown, Kenneth Cardarelle, Deborah Desmarais, Sual Downes, Jason Faulkner, Isaiah Johnson, Shireen Reyahi and Tre Jur Williams ("Named Plaintiffs"), along with the twenty-eight individuals who have joined this case as Opt-in Plaintiffs (collectively "Plaintiffs"). As such, I am familiar with all of the facts and circumstances of this action. I make this declaration in support of Plaintiffs' Unopposed Motion for Approval of Collective Action Settlement and Release.

2. The Davis Firm (Plaintiffs' Counsel") is based in New York City and focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation, wage and hour and discrimination claims, as well as contract and severance negotiations.

3.  I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims and the claims of the proposed collective.

4.  I make these statements based on personal knowledge and would so testify if called as a witness at trial.

5.  I submit this Declaration in Support of Plaintiffs' Unopposed Motion for Approval of Collective Action Fair Labor Standards Act Settlement and Release ("Approval Motion"). All defined terms contained herein shall have the same meanings as set forth in the Settlement Agreement, attached hereto as **Exhibit 1**. The Settlement Agreement has been executed by the Named Plaintiffs and an authorized representative of Defendant BioReference Laboratories, Inc. ("BioReference").

**Procedural History**

6.  This case was initially filed on April 21, 2022. Plaintiffs filed an Amended Complaint on July 5, 2022. (ECF Nos. 1, 40).

7.  Plaintiffs alleged in the Amended Complaint that, in June 2021, BioReference entered into an agreement with Royal Caribbean Group to conduct "a COVID-19 testing program for U.S. based crew and guests who cruise with Royal Caribbean Group [("RCG")], helping provide a safe environment for travelers." (Am. Comp. ¶ 64). Plaintiffs alleged that BioReference directly employed or indirectly retained people to work as Cruise Swabbers and Team Leads on RCG ships. Plaintiffs alleged that Cruise Swabbers and Team Leads would travel from their homes to U.S. ports (often in different states) and then live on cruise ships traveling to international destinations to "provide a safe environment for travelers." *Id.* ¶ 65. The program ended as of June 19, 2022.

8.  BioReference filed an Answer on September 8, 2022. (ECF No. 56).

9. The Amended Complaint asserts twenty causes of action including claims for unpaid overtime under the Fair Labor Standards Act ("FLSA") and applicable state laws, failure to reimburse expenses and failure to provide accurate wage statements. (ECF No. 40). After additional investigation, Plaintiffs focused on claims for unpaid time on the first day of cruises, unpaid "off the clock" time, and claims for unreimbursed expenses.

10. During the period from June 2022 to March 2023, the parties vigorously litigated this case. Plaintiffs opposed what they considered improper communications to putative class members and filed a motion seeking a protective order and corrective communications. (Mot. Discl. of Information, Jul. 27, 2022, ECF No. 44); (Decl. of Sual Downes, Aug. 5, 2022, ECF No. 49). Plaintiffs also filed a motion for conditional certification, supported by ten detailed Declarations. (Mot. to Certify Class, Aug. 26, 2022, ECF No. 52). BioReference opposed both of these motions. (ECF Nos. 57, 63). BioReference also filed a motion to compel certain opt-ins to arbitrate their claims and moved to stay the lawsuit (Mot. to Compel, Oct. 25, 2022, ECF No. 65), which Plaintiffs opposed (ECF No. 69). In addition, the attorneys for the parties disagreed about the enforceability of a Separation Agreement signed by named plaintiff Sual Downes and other putative collective action members. This disagreement was likely to lead to additional motion practice.

**Settlement Negotiations**

11. In March 2023, after a conference with the Court, the parties agreed to mediation with Stephen P. Sonnenberg. At the time of the conference, the motions discussed above were pending. They were then administratively terminated without prejudice by the Court pending mediation. (ECF No. 81).

12. Both parties were aware that there would be substantial disputes about factual and legal issues. In advance of the mediation, the parties exchanged a significant amount of documents and data regarding both liability and damages. Both parties submitted detailed mediation statements and supporting evidence to the mediator. On May 23, 2023, the parties participated in a full day of mediation and agreed on the terms of this proposed settlement.

**The Proposed Settlement**

13. BioReference has agreed to pay a maximum of $1,600,000 (the "Maximum Settlement Amount") to resolve the claims in this case. The Net Settlement Fund is equal to the Maximum Settlement Amount minus the Cost and Fee Award, the Service Awards, and the Settlement Administration Costs. The Plaintiffs and the putative collective action members who choose to participate in this settlement are eligible to receive shares of the Net Settlement Amount. All Plaintiffs and Participating Collective Members will receive: (1) $300 for claims for alleged unreimbursed business expenses, and (2) a share of the remainder of the Net Settlement Amount, ranging from $417.39 (for individuals who worked one cruise) to $11,334.66, based on the number of cruises they worked as Cruise Swabbers or Teams Leads (as reflected in BioReference's records).

14. Potential Collective Members will receive notice of the settlement (Settlement Agreement, Exhibit 2) via U.S. mail to the last address known by BioReference (to the extent reflected in BioReference's records). To the extent that BioReference has their email addresses and cell phone numbers, they will also receive notice via email and a reminder via text message (provided that the Settlement Administrator determines that sending such text messages is permissible under applicable law). The notice will state the specific gross Settlement Award that the recipient is eligible to claim. The Potential Collective Members will receive their settlement

payments if they timely complete and return a simple "Claim Form And Release" within sixty days of receiving notice. (Settlement Agreement, Exhibit 3).

15. If this settlement is approved, the Settlement Administrator will send the Notice Packet to each former Cruise Swabber and Team Lead. In addition to allowing a Putative Collective Member to elect to participate in the settlement, the Claim Form And Release also operates as a release of claims.

16. Unlike in a Rule 23 class action settlement, there is no release of claims in an FLSA collective action settlement unless the individual decides to join the case and receive their share of the settlement, meaning there are no due process issues implicated. A choice not to opt-in and claim a portion of the settlement means the person has decided to retain their claims and can assert them separately (or not) as they wish. The Notice Packet informs Potential Collective Members of the claims in this case and their options.

17. Plaintiffs' counsel submits that this result is an excellent one for the Potential Collective Members. The litigation would have been difficult for a number of reasons, including the potentially disparate facts related to Plaintiffs' "off the clock" claims and the fact that some Potential Collective Members signed arbitration agreements that include class and collective action waivers. Considering that many Potential Collective Members worked only a few cruises, no one worked these jobs for more than a year, and the job no longer exists, the maximum potential recovery for many Potential Collective Members would be small and the risk of loss could be high.

18. Plaintiffs' Counsel constructed a damages model based on Plaintiffs' claims for (1) unpaid time on the first day of cruises, (2) unpaid "on call" time, and (3) "off the clock" time. The first component of this model was based on a standard amount of time, but this claim only implicated one working day per pay period. Plaintiffs estimated that the claim for unpaid overtime

attributable to the first day of cruises was approximately $750,000. BioReference disputed whether this time was compensable at all, as well as the amount of time at issue. The second and third components of Plaintiffs' model involved much more uncertain and variable amounts of time. Plaintiffs estimated that damages for these categories could have been approximately $1,400,000. Plaintiffs also pursued claims for failure to reimburse expenses or late reimbursement of expenses. These proved to also be very fact-specific issues and many of the plaintiffs worked in states that provide limited rights to recover for unreimbursed expenses.

**Service Awards**

19. Plaintiffs' Motion requests that the Court approve Service Awards of $15,000 for Named Plaintiffs Rosenberg and Brown, and $10,000 for the other seven Named Plaintiffs.

20. Plaintiffs Rosenberg and Brown brought the issues in the litigation to the attention of Plaintiffs' counsel. They spent substantial time in interviews, collecting and explaining documents and completing declarations.

21. The other seven Named Plaintiffs also spent substantial time with Plaintiffs' counsel, searched for and provided documentary evidence, and worked with Plaintiffs' Counsel to complete Declarations that were submitted in support of Plaintiffs' Motion for Conditional Certification. Each of the Named Plaintiffs also provided valuable assistance to Plaintiffs' Counsel during the mediation process.

**Award of Costs and Attorneys' Fees**

22. In the Settlement Agreement, the parties agreed that Plaintiffs' Counsel would seek, and BioReference would not oppose, an award of fees up to 33% of the Maximum Settlement Amount of $1,600,000 and an additional amount for the actual litigation expenses incurred by

Plaintiffs' counsel. Plaintiffs' Counsel incurred $11,226.09 in litigation related expenses (mediation fees, fees for a consulting expert on damages and fees for online research services).

23. Plaintiffs' counsel seeks approval of a fee award of $533,280 and reimbursement of $11,226.09.

24. Plaintiffs' Counsel undertook this action entirely on a contingent fee basis, assuming a substantial risk that they might not be compensated at all for their efforts.

25. Each of Plaintiffs' thirty-seven clients in this matter agreed to retainer agreements that provide for a contingency fee of 33% of each individual's recovery.

26. Plaintiffs' counsel's lodestar confirms this fee request is entirely reasonable. To date, Plaintiffs' counsel has invested more than 780 hours in this litigation. As stated above, in addition to working with thirty-seven clients and drafting a detailed Complaint and Amended Complaint, Plaintiffs' counsel briefed three significant motions. Plaintiffs' counsel devoted substantial time to researching novel issues presented in this litigation (including the applicability of the FLSA to individuals who spent portions of their working time on cruise ships, claims available under various state laws and conditional and class certification). Plaintiffs' counsel also devoted a significant amount of time and resources to analyzing written discovery and data and prepared a detailed mediation statement.

27. Through conclusion of the settlement, Plaintiffs' Counsel's lodestar will be in excess of $400,000. Plaintiffs' Counsel's billing records are attached hereto as **Exhibit 2**. Copies of invoices for expenses are attached as **Exhibit 3**.

28. If the court were to apply the lodestar approach as a cross-check on the percentage-of-recovery approach, Plaintiffs are seeking only a modest 1.33 multiplier, which is entirely reasonable.

29. I am a Partner at The Law Office of Christopher Q. Davis (the "Davis Firm"). I have more than twenty-five years of experience in employment law. I have been a Partner at the Davis Firm since November 2021.

30. I am a member of the New York bar and I am admitted to practice in the U.S. District Court for the Southern and Eastern Districts of New York. I earned a Bachelor of Arts degree from St. John Fisher College in 1992 and I earned a Juris Doctor from Villanova Law School in 1997 (Magna Cum Laude and Order of the Coif).

31. During my first year after graduating law school, I was a law clerk to Honorable James McGirr Kelly of the United States District Court, Eastern District of Pennsylvania.

32. After clerking, I have focused my practice on employment law and I have developed expertise in class and collective action litigation.

33. From 1998 to 2005 I was an Associate in the Labor and Employment law departments of Morgan, Lewis & Bockius and Seyfarth Shaw.

34. From 2005 to 2016, I held a number of in-house counsel roles at Morgan Stanley and Luxottica Group. For ten years, I was Global Head of Litigation and Employment Law for Luxottica Group. I was responsible for hiring and managing in-house and external lawyers and overseeing Luxottica Group's global litigation portfolio. I was also responsible for employment law compliance and was an advisor to business leaders.

35. From 2016 to 2021, I was Of Counsel/Principal in the labor and employment law departments of Seyfarth Shaw and Jackson Lewis. While at Seyfarth Shaw, my billable rate was $750 per hour. While at Jackson Lewis my billable rate was $650 per hour.

36. I have extensive experience managing and litigating class and collective lawsuits for both defendants and plaintiffs. I have significant experience advising employers on wage and hour compliance and litigation.

37. I have taken and defended numerous depositions in all types of employment litigation, including collective and class action cases.

38. I have also settled or participated in settlement negotiations of more than 25 collective and/or class actions.

39. The following are some of the cases in which I have been lead counsel or played a significant role on a litigation team: *Cucinotta v. Personal Touch Holding Corp.*, 19-CV-0057 (SJF)(AYS) (EDNY); *Watterson v. RUI Mgmt. Servs., Inc.*, 20-CV-1783 (GRB)(JMW) (EDNY); *Durling v. Papa John's International, Inc.*, 16 Civ. 3592 (CS)(JCM) (SDNY); *Zorilla v. Carlson Restaurants, Inc.* 14 Civ. 2740 (AT)(GWG) (SDNY); and *Chan v. Big Geyser*, 17-CV-6473 (ALC)(SN) (SDNY).

40. Christopher Q. Davis and I are co-lead counsel for the Named Plaintiffs and Potential Collective Members. Mr. Davis is Principal and Managing Partner of The Law Office of Christopher Q. Davis PLLC.

41. Mr. Davis has practiced for more than twenty years with a primary focus on litigation of labor and employment law cases. He is a member of the bar of the State of New York and is admitted to practice before the Second Circuit Court of Appeals, and the U.S. District Court for the Eastern, Southern and Northern Districts of New York.

42. Mr. Davis received an undergraduate degree in 1995 from The College of the Holy Cross in Worcester, Massachusetts.

43. In 2001, Mr. Davis received a Juris Doctor from the Catholic University of America in Washington, D.C.

44. From 2001 to 2006, Mr. Davis was employed as an Assistant District Attorney in the Manhattan District Attorney's Office.

45. During his tenure as an Assistant District Attorney, Mr. Davis tried approximately 20 felony and misdemeanor cases to verdict.

46. Following his tenure as an Assistant District Attorney, Mr. Davis entered private practice as a senior Associate with the employment law firm Thompson Wigdor & Gilly LLP ("TWG"), now Wigdor LLP, assuming primary responsibility over several plaintiffs'-side and management-side lawsuits.

47. After leaving TWG in 2009, Mr. Davis gained employment with The Ottinger Firm, P.C., and served as the firm's Managing Attorney.

48. While with The Ottinger Firm, Mr. Davis was responsible for all aspects of the firm's operation, including managing and serving as lead attorney on numerous nationwide class and collective actions.

49. Mr. Davis has extensive experience managing and litigating wage and hour lawsuits. He has taken and defended numerous depositions in collective and class action cases.

50. Since entering private practice, Mr. Davis has settled or participated in settlement negotiations of more than 20 collective and/or class actions.

51. While with The Ottinger Firm, Mr. Davis was lead Counsel in the matter *of Martinez v. Forest Laboratories, Inc. et al,* 10-CV-06032 (S.D.N.Y.), in which preliminary certification on an FLSA class was granted by Judge William H. Pauley on June 2, 2011.

52. While with The Ottinger Firm, Mr. Davis served as lead Counsel in the matter of *Landin et al. v. UBS et al*, 10-CV-711 (S.D.N.Y.), a hybrid class and collective action which settled upon beneficial terms for the class and with the final approval of Judge Richard M. Berman.

53. While with The Ottinger Firm, Mr. Davis also served as lead Counsel on the following overtime class actions in which The Ottinger Firm was appointed Class Counsel: (a) *Spencer v. Bargain Land*, 10-CV-0957 (S.D.N.Y.); (b) *Fouathia v. Gurwich Products*, 10-CV-5411 (S.D.N.Y.); (c) *Gomez v. Gravitas Technology, Inc.,* 10-CV-6412 (S.D.N.Y.).

54. As a partner at the law firm of Stoll, Glickman & Bellina, LLP, Mr. Davis was appointed Class Counsel in *Bryan, et al. v. Urban Telecommunications, Inc., et al.*, Case No. 12-CV-2186 (S.D.N.Y.), *Oleniak, et al. v. Time Warner Cable, Inc., et al.*, Case No. 1:12-cv-03971 (S.D.N.Y), and *Francois, et al. v. Entrust Merchant Solutions d/b/a Entrust Cash Advance, et al.,* Case No. 13-cv-0455 (S.D.N.Y.), all overtime class and collective actions in which Mr. Davis served as lead attorney. Each of the abovementioned litigations settled upon favorable terms for the class and was approved by Judge P. Kevin Castel, Judge Katherine Polk Failla, and Judge Analisa Torres, respectively.

55. On July 28, 2014, Mr. Davis resigned from Stoll, Glickman and Bellina, LLP to form his own law firm.

56. As managing partner, Mr. Davis has been appointed Class Counsel on numerous occasions, including but not limited to: *Alexander et. al. v. Safeguard Storage et al.*, 1:13-cv-06061-AMD-RLM (EDNY); *Hartley et al v. Wells Fargo & Company et al*, 2:14-cv-05169 (EDNY); *Sheikh et al v. Align Communications, Inc.*, 1:15-cv-07548-LGS (SDNY); *Lobbe et al v. Cablevision System Corporation et al*, 1:16-cv-02207-AKH (SDNY); *Villegas et al v. Cablevision Systems New York City Corporation et al*, 1:17-cv-05824-VMS (EDNY); *Douglas v. Allied*

*Universal Security Services et al,* 1:17-cv-06093-SJB (EDNY); and *Bannerman v. Air-Sea Packing Group Inc., et al* Case No. 18-cv-6146 (SDNY).

57. Rachel Haskell is also a Partner at the Davis Firm. Margaret A. Malloy is a former Partner at the Davis Firm. Ms. Haskell and Ms. Malloy performed limited work on this matter in areas in which they have expertise. John Pietruszka and Hajar Hasani are former Associate Attorneys and Nicholas Bittner is a current Associate Attorney at the Davis Firm. Antero Barrantes is a Paralegal at the Davis Firm. Each of these individuals performed work that is appropriate in light of their experience. Entries in Exhibit for "Law Clerk" reflect work performed by law students who worked for the Davis Firm. Law Clerks typically performed legal research or document review.

**Settlement Administrator**

58. RG/2 is a full-service legal settlement administration firm with experience on thousands of settlement administration projects.

59. RG/2 is very experienced in settlement administration related to employment law.

60. Notably, Plaintiffs' Counsel has used RG/2 for settlement administration of complex wage and hour class and collective actions in the past and found them to be reliable, experienced, and cost-efficient.

61. Neither side has any experience or relationship with RG/2 outside the settlement or notice administration context.

62. RG/2's estimate of $36,213.00 to handle all of the responsibilities assigned to the Administrator under the Settlement Agreement (including, but not limited to, administering notice, calculating settlement awards, managing receipt of Claim Forms and issuing checks) is reasonable given the size of the class and the services required.

Dated: October 20, 2023
      New York, New York

Respectfully submitted,

By: _/s/ Brendan Sweeney_____
Brendan Sweeney
**The Law Office of Christopher Q. Davis**
225 Broadway, Suite 1803
New York, New York 10007
Telephone: (646) 430-7930
*Attorneys for Plaintiffs and the*
*Proposed Collective*