**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LAURENCE ROSENBERG, KELLY M. BROWN, KENNETH CARDARELLE, DEBORAH DESMARAIS, SUAL DOWNES, JASON FAULKNER, ISAIAH JOHNSON, SHIREEN REYAHI, and TRE JUR WILLIAMS, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 2:2022-cv-02321 |
| vs. | |
| BIOREFERENCE LABORATORIES, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR APPROVAL OF COLLECTIVE ACTION FAIR LABOR STANDARDS ACT**
**SETTLEMENT AND RELEASE**

Nicholas Bittner
Christopher Q. Davis
Brendan Sweeney
Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, NY 10004
19176351218
nbittner@workingsolutionsnyc.com
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**I. BACKGROUND** .......................................................................................................... **1**
        **A. The Litigation** ................................................................................ **1**
        **B. The Proposed Settlement** ......................................................... **3**

**II. ARGUMENT** ............................................................................................................ **5**
        **C. Approval of the Settlement is Warranted** ............................ **6**
            **1. The Settlement Resolves a Bona Fide FLSA Dispute** ............. **6**
            **2. The Settlement is Fair and Reasonable** .................................. **7**
            **3. The Proposed Settlement "Furthers the FLSA's Implementation"**    **9**
        **D. The Court Should Approve the Expense and Fee Request** ................. **10**
        **F. The Court Should Approve the Settlement Administrator's Costs** ............. **15**

**III. CONCLUSION** ....................................................................................................... **15**

## TABLE OF AUTHORITIES

*Brumley v. Camin Cargo Control, Inc.* ................................................................... 7, 9
2012 U.S. Dist. LEXIS 40599 at *6 (D.N.J. Mar. 26, 2012)

*Campbell v City of Los Angeles*      4
903 F.3d 1090, 1105 (9th Cir. 2018)

*Clarke v. Flik Int' Corp.* ....................................................................................... 6, 9
2020 U.S. Dist. LEXIS 26306, *5 (D.N.J. Feb. 14, 2020)

*Creed v. Benco Dental Supply Co.* ......................................................................... 11
No. 3:12- CV-01571, 2013 U.S. Dist. LEXIS 132911, at *17 (M.D. Pa. Sep. 17, 2013)

*Davis v. Essex Cnty.* ............................................................................................... 7
2015 U.S. Dist. LEXIS 161285, *5-6 (D.N.J. December 1, 2015)

*Davis v. J.P. Morgan Chase & Co.* ......................................................................... 13
827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011)

*Dominguez v. Galaxy Recycling, Inc.* ..................................................................... 7
2017 U.S. Dist. LEXIS 88855, *16-17 (D.N.J. June 9, 2017)

*Frank v. Eastman Kodak Co.* .................................................................................. 7
228 F.R.D. 174, 186 (W.D.N.Y. 2005)

*Gabrielyan v. S.O. Rose Apartments LLC* ................................................................... 6
2015 U.S. Dist. LEXIS 135615 (D.N.J. Oct. 5, 2015)

*Girsh v. Jepson* ................................................................................................ 11
521 F.2d 153, 156 (3d Cir. 1975)

*Godshall v. Franklin Mint Co.* ............................................................................. 15
No. 01-CV-6539, 2004 U.S. Dist. LEXIS 23976, at *19-20 (E.D. Pa. Dec. 1, 2004)

*Goodman v. Burlington Coat Factory Warehouse Corp.* ........................................................
.................................................. 11
No. 11-cv-04395-JHS-JS (D.N.J. June 10, 2020)

*In re Cendant Corp. Litig.* ................................................................................... 12
264 F.3d 201, 256 (3d Cir. 2001)

*In re Datatec Sys. Sec. Litig.* ................................................................................ 12
No. 04-CV-525 (GEB) 2007 U.S. Dist. LEXIS 87428, at *20 (D.N.J. Nov. 28, 2007)

*In re Mercedes-Benz Emissions Litigation* ................................................................ 13
No. 2:16-cv-881 (KM)(ESK), 2021 U.S. Dist. LEXIS 256167, at *51 (D.N.J. Aug. 2, 2021)

*In re Merry-Go-Round Enterprises, Inc.* ...............................................................
.................................................. 13
244 B.R. 327 (Bankr. D. Md. 2000)

*In re Rite Aid Corp. Sec. Litig.* .......................................................................... 12, 13
396 F.3d 294, 300 (3d Cir. 2005)

*Ins. Brokerage Antitrust Litig.* ............................................................................ 14
2007 U.S. Dist. LEXIS 74711, at *60-61 (D.N.J. Oct. 5, 2007)

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.* ............................................................ 10
2016 U.S. Dist. LEXIS 126893, at * 8-9 (N.D. Ill. Sept. 16, 2016)

*Lovett v. Connect Am.com* ................................................................................. 11
No. 14-2596, 2015 U.S. Dist. LEXIS 121838, at *14-15 (E.D. Pa. Sep. 11, 2015)

*Lazy Oil Co. v. Witco Corp.* ............................................................................... 15
95 F. Supp. 2d 290, 347 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581, 588 (3d Cir. 1999)

*Lucia v. McClain & Co.* .................................................................................... 11
No. 11-cv-930 (CCC-MF), 2015 U.S. Dist. LEXIS 164584 (D.N.J. Dec. 8, 2015)

*Lynn's Food Stores, Inc. v. United States* ................................................................ 5, 6, 7
679 F.2d 1350, 1353 (11th Cir. 1982)

*Mabry v. Hildebrandt* ................................................................................................... 10
2015 U.S. Dist. LEXIS 112137, *2-3 (E.D. Pa. Aug. 24, 2015)

*McCoy v. Health Net, Inc.* ............................................................................................... 9
569 F. Supp. 2d 448, 462 (D.N.J. 2008)

*McGee v. Ann's Choice, Inc.* ........................................................................................... 5
2014 U.S. Dist. LEXIS 75840, *4-5 (E.D. Pa. June 4, 2014)

*New England Carpenters Health Benefits Fund. v. First Databank, Inc.* ...................... 13
2009 WL 2408560 (Aug.  3, 2009)

*O'Connor v. Oakhurst Dairy* ........................................................................................... 5
2015 U.S. Dist. LEXIS 67029, at *10 (D. Me. May 22, 2015)

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.* ............................................................... 13
No. 11 Civ. 520, 2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012)

*Rivet v. Office Depot, Inc.* .............................................................................................. 14
No. 12-cv-2992 (D.N.J. Dec. 21, 2017)

*Romero v. La Revise Assocs.* ............................................................................................ 6
*LLC*, 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014)

*Rouse v. Comcast Corp.* ................................................................................................. 11
No. 14-1115, 2015 U.S. Dist. LEXIS 49347, at *29 (E.D. Pa. Apr. 14, 2015)

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.* ..........................................................
................................................... 14
659 F.3d 234, 244 (2d Cir. 2011)

*Smith v. Daimlerchrysler Servs. N. Am., LLC* ............................................................... 11
2005 U.S. Dist. LEXIS 25116, *3-4 (D.N.J. Oct. 19, 2005)

*Somogyi v. Freedom Mortg. Corp.* ................................................................................ 14
2020 U.S. Dist. LEXIS 194035 at *26-27 (D.N.J. Oct. 20, 2020)

*Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.* ...................................... 13
2005 U.S. Dist. LEXIS 9705, 2005 WL 1213926 at *39-40, 60 (E.D. Pa. May 20, 2005)

*Wal- Mart Stores, Inc. v. Visa U.S.A., Inc.* ................................................................... 12

396 F.3d 96, 122 (2d Cir. 2005)

*Weiss v. Mercedes-Benz of N. Am.* .................................................................................13
899 F.Supp. 1297, 1304 (D.N.J. 1995)

Plaintiffs Laurence Rosenberg, Kelly M. Brown, Kenneth Cardarelle, Deborah Desmarais, Sual Downes, Jason Faulkner, Isaiah Johnson, Shireen Reyahi and Tre Jur Williams, along with the twenty-eight individuals who have joined this case as Opt-in Plaintiffs (collectively "Plaintiffs") submit this memorandum in support of their Unopposed Motion for Approval of Collective Action Fair Labor Standards Act Settlement and Release.  Under the proposed settlement, Defendant BioReference Laboratories, Inc. ("BioReference") agreed to pay up to $1,600,000 to resolve all the claims from the Plaintiffs and any eligible individuals who elect to participate in the settlement.  Plaintiffs submit that this settlement represents an excellent result for the Plaintiffs and the other former Cruise Swabbers and Team Leads who join the settlement.  The Plaintiffs and Participating Collective Member will be eligible to receive awards ranging from $417.44 (for individuals who worked one cruise) to $11,339.63.  The awards are based on: (1) $300 to resolve claims for unreimbursed business expenses; and (2) $117.44 per cruise worked to resolve claims of unpaid overtime and other claims for wages.

Plaintiffs respectfully request that the Court grant their unopposed motion for approval as it complies with the criteria applicable to the settlement of claims under the Fair Labor Standards Act ("FLSA").

I.     BACKGROUND

   A.     The Litigation

Plaintiffs alleged in the Amended Complaint that, in June 2021, BioReference entered into an agreement with Royal Caribbean Group to conduct "a COVID-19 testing program for U.S. based crew and guests who cruise with Royal Caribbean Group [("RCG")], helping provide a safe environment for travelers." (Am. Comp. ¶ 64).  Plaintiffs alleged that BioReference directly

1

employed or indirectly retained 670 people to work as Cruise Swabbers and Team Leads on RCG ships. Plaintiffs alleged that Cruise Swabbers and Team Leads would travel from their homes to U.S. ports (often in different states) and then live on cruise ships traveling to international destinations to "provide a safe environment for travelers." *Id.* ¶ 65. The program ended as of June 19, 2022.

Plaintiffs filed their original Complaint in the District of New Jersey on April 21, 2022, and filed an Amended Complaint on July 5, 2022. (ECF Nos. 1, 40). BioReference filed an Answer on September 8, 2022. (ECF No. 56). The Amended Complaint asserts twenty causes of action including claims for unpaid overtime under the Fair Labor Standards Act ("FLSA") and applicable state laws, failure to reimburse expenses and failure to provide accurate wage statements. (ECF No. 40). After additional investigation, Plaintiffs focused on claims for unpaid time on the first day of cruises, unpaid "off the clock" time, and claims for unreimbursed expenses.

During the period from June 2022 to March 2023, the parties vigorously litigated this case. (Sweeney Dec. ¶ 10). Plaintiffs opposed what they considered improper communications to putative class members and filed a motion seeking a protective order and corrective communications. (Mot. Discl. of Information, Jul. 27, 2022, ECF No. 44); (Decl. of Sual Downes, Aug. 5, 2022, ECF No. 49). Plaintiffs also filed a motion for conditional certification, supported by ten detailed Declarations. (Mot. to Certify Class, Aug. 26, 2022, ECF No. 52). BioReference opposed both of these motions. (ECF Nos. 57, 63). BioReference also filed a motion to compel certain opt-ins to arbitrate their claims and moved to stay the lawsuit (Mot. to Compel, Oct. 25, 2022, ECF No. 65), which Plaintiffs opposed (ECF No. 69). In addition, the attorneys for the

parties disagreed about the enforceability of a Separation Agreement signed by named plaintiff Sual Downes and other putative collective action members.  This disagreement was likely to lead to additional motion practice.

In March 2023, after a conference with the Court, the parties agreed to mediation with Stephen P. Sonnenberg.  At the time of the conference, the motions discussed above were pending.  They were then administratively terminated without prejudice by the Court pending mediation.  (ECF No. 81).  Both parties were aware that there would be substantial disputes about factual and legal issues.  In advance of the mediation, the parties exchanged a significant amount of documents and data regarding both liability and damages.  Both parties submitted detailed mediation statements and supporting evidence to the mediator.  On May 23, 2023, the parties participated in a full day of mediation and agreed on the terms of this proposed settlement.  (Sweeney Dec. ¶¶ 11-12).

**B.    The Proposed Settlement**

The Settlement Agreement is attached to the Declaration of Brendan Sweeney ("Sweeney Dec.") as Exhibit 1.  BioReference has agreed to pay a maximum of $1,600,000 (the "Maximum Settlement Amount") to resolve the claims in this case.  The Net Settlement Fund[1] is equal to the Maximum Settlement Amount minus the Cost and Fee Award, the Service Awards, and the Settlement Administration Costs. The Plaintiffs and the putative collective action members who choose to participate in this settlement are eligible to receive shares of the Net Settlement Amount.  All Plaintiffs and Participating Collective Members will be eligible to

---

[1] Capitalized terms are defined in the Settlement Agreement.  (Sweeney Dec., Ex. 1).

receive awards ranging from $417.44(for individuals who worked one cruise) to $11,339.63. The awards are based on: (1) $300 to resolve claims for unreimbursed business expenses; and (2) $117.44 per cruise worked (as reflected in BioReference's records) to resolve claims of unpaid overtime and other claims for wages.

Potential Collective Members will receive notice of the settlement (Settlement Agreement, Exhibit 2) via U.S. mail to the last address known by BioReference (to the extent reflected in BioReference's records).  To the extent that BioReference has their email addresses and cell phone numbers, they will also receive notice via email and a reminder via text message (provided that the Settlement Administrator determines that sending such text messages is permissible under applicable law).  Each notice will state the specific gross Settlement Award that the recipient is eligible to claim. The Potential Collective Members will receive their settlement payments if they timely complete and return a simple "Claim Form And Release" within sixty days of receiving notice.  (Settlement Agreement, Exhibit 3).

The Settlement also includes the following terms:

- "The Wage Payment Amount will be considered wages subject to the withholding of all applicable local, state, and federal taxes."  (Section 3.6(A)).

- "The Liquidated Damages Payment and Business Expense Reimbursement Payment will be considered non-wage payments for interest, unreimbursed business expenses, liquidated damages and any and all other statutory and civil penalties available under any applicable local, state, and federal laws."  (Section 3.6(B).

- In return for the consideration provided under the Settlement, Participating Collective Members "will, to the fullest extent permissible under applicable law, release, from the beginning of time through the date the Court enters the Final Approval Order, any and all wage and hour claims, rights, and causes of action, whether known or unknown, against the Released Parties under all federal, state, and local wage and hour laws including, but not limited to, the Fair Labor Standards Act and the wage and hour laws of the states of Colorado, Florida,

4

Maryland, New Jersey, New York and Washington including, without limitation, all statutory, constitutional, contractual, and common law claims for wages, damages, penalties, interest, attorneys' fees, restitution, and equitable relief (including claims for overtime wages and any other wages)."  (Section 4.1).

• Subject to Court approval, Plaintiffs' Counsel can request "up to 33% of the Maximum Settlement Amount" as fees and seek reimbursement of actual costs. (Section 3.3).

• Subject to Court approval, service awards of $15,000 each shall be paid to Plaintiffs Laurence Rosenberg and Kelly Brown and service awards of $10,000 shall be paid to the other seven Named Plaintiffs.  (Section 3.2).

If this settlement is approved, the Settlement Administrator will send the Notice Packet to each former Cruise Swabber and Team Lead.  In addition to allowing a Putative Collective Member to elect to participate in the settlement, the Claim Form And Release also operates as a release of claims.  This efficient approach for FLSA-only settlements has become commonplace, if not the norm, because an FLSA collective action is an opt-in group action. Unlike in a Rule 23 class action settlement, there is no release of claims in an FLSA collective action settlement unless the individual decides to join the case and receive their share of the settlement, meaning there are no due process issues implicated.[2]  A choice not to opt-in and claim a portion of the settlement means the person has decided to retain their claims and can assert them separately (or not) as they wish.  The Notice Packet informs Potential Collective

---

[2] *See, e.g., Campbell v City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018) (leading decision addressing the difference in the nature of FLSA collective actions and Rule 23 class actions and how the former is "a kind of mass action, in which aggrieved workers act as a collective of individual plaintiffs with individual cases"); *see also, e.g., O'Connor v. Oakhurst Dairy*, 2015 U.S. Dist. LEXIS 67029, at *10 (D. Me. May 22, 2015) ("The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context.").

Members of the claims in this case and their options.  It also informs them how they can contact the Settlement Administrator or Plaintiffs' counsel for more information.

Plaintiffs' counsel submits that this result is an excellent one for the Potential Collective Members.  The litigation would have been difficult for a number of reasons, including the potentially disparate facts related to Plaintiffs' "off the clock" claims and the fact that some Potential Collective Members signed arbitration agreements that include class and collective action waivers.  Considering that many Potential Collective Members worked only a few cruises, no one worked these jobs for more than a year, and the job no longer exists, the maximum potential recovery for many Potential Collective Members would be small and the risk of loss could be high.  (Sweeney Dec. ¶ 17).  This Settlement, therefore, readily meets the requirements for approval of a FLSA settlement, as is next addressed.

## II.    ARGUMENT

A Court must approve the terms of a settlement of FLSA claims. *McGee v. Ann's Choice, Inc.*, 2014 U.S. Dist. LEXIS 75840, *4-5 (E.D. Pa. June 4, 2014) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). The standard for approval is straightforward: a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions," and if a settlement reflects "a reasonable compromise," then the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores* 679 F.2d at 1352-54 (*citing Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)); *see also Clarke v. Flik Int' Corp.*, 2020 U.S. Dist. LEXIS 26306, *5 (D.N.J. Feb. 14, 2020) ("[a]lthough the Third Circuit has not adopted a standard for evaluating the settlement of a FLSA action, district courts in this Circuit have followed the

guidance set forth by the Eleventh Circuit in *Lynn's Food Stores*…."). Accordingly, a FLSA settlement will be approved if it: (1) resolves a bona fide dispute under the FLSA; (2) is fair and reasonable for the employee(s); and (3) furthers the FLSA's implementation in the workplace. *Id.* 2020 U.S. Dist. LEXIS at *5-7; *see also Gabrielyan v. S.O. Rose Apartments LLC*, 2015 U.S. Dist. LEXIS 135615 (D.N.J. Oct. 5, 2015).[3]

### C.    Approval of the Settlement is Warranted

The proposed settlement should be approved because it satisfies the relevant criteria.

### 1.    The Settlement Resolves a Bona Fide FLSA Dispute

In determining whether the settlement resolves a bona fide dispute, the Court must be assured that the settlement "reflect[s] a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching," and the bona fide dispute must be determined to be one over "factual issues" not "legal issues such as the statute's coverage or applicability." *Brumley v. Camin Cargo Control, Inc.*, 2012 U.S. Dist. LEXIS 40599 at *6 (D.N.J. Mar. 26, 2012) (*quoting Lynn's Food Stores*, 679 F.2d at 1350); *Davis v. Essex Cnty*, 2015 U.S. Dist. LEXIS 161285, *5-6 (D.N.J. December 1, 2015); *Dominguez v. Galaxy Recycling, Inc.*, 2017 U.S. Dist. LEXIS 88855, *16-17 (D.N.J. June 9, 2017).  Here, the Proposed Settlement would resolve a bona fide dispute over issues such as (1) whether BioReference exercised control over individuals who were hired and paid by staffing agencies such that

---

[3] Because an FLSA collective settlement does not implicate the rights of absent class members, "[e]valuation of an FLSA settlement is less rigorous than the court's evaluation of a class action settlement because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *Romero v. La Revise Assocs., LLC*, 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014).

BioReference was their "employer"; (2) whether uncompensated time on the first day of each cruise was compensable; (3) whether certain allegedly "on call" time was compensable given that, according to BioReference, Cruise Swabbers were never "on-call" and, when they were "on-call," Team Leads were completely relieved of work responsibilities; (4) whether BioReference maintained appropriate records of all hours worked and the extent to which those hours arguably seemed to contradict some allegations in the lawsuit; (5) whether conflicts of interest precluded certification of a collective action including both line-level workers (Cruise Swabbers) and their onboard supervisors (Team Leads); (6) whether, even in the absence of any conflicts of interest, the plaintiffs would be able to demonstrate that they and the other putative collective action members were similarly situated with respect to an alleged unlawful policy, especially given that BioReference's policies expressly prohibited the conduct alleged in the lawsuit; (7) the impact of arbitration agreements (with class and collective action waivers) signed by many putative collective action members would have on the claims and potential value of the case; (8) the impact of records signed by plaintiffs and other putative collective action members seemingly reflecting that they worked fewer hours than they now allege; (9) the impact of numerous posts on social media by plaintiffs and other putative collective action members seemingly showing them enjoying the amenities of cruise ship life on their allegations that they were overworked and denied pay; (10) the enforceability of a release of claims and class and collective action waiver signed by a named plaintiff and other putative collective action members; and (11) the impact of evidence presented by BioReference that it went to great lengths to ensure that workers were paid properly and that any alleged

underpayments were one-off events that cannot form the basis for a class or collective action. The settlement resolves these, and other, bona fide disputes.

### 2. The Settlement is Fair and Reasonable

While it is often recognized that "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion" (*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)) – this Settlement represents a fair and reasonable result, one reached through arms' length negotiation, over contested issues, and with assistance from a third party mediator.

First, counsel for Plaintiffs are experienced wage and hour litigators who had an adequate appreciation of the merits of this case when negotiating the settlement. Plaintiffs' counsel worked with thirty-seven clients who provided information through interviews and by providing documents, including significant amounts of electronic communications. Counsel for the Parties agreed to exchange substantial portions of their factual presentations to the mediator. Counsel for Plaintiffs understood the evidence and data that supported their positions. Counsel also exchanged written statements on their respective positions on legal issues in connection with the mediation. Informed and competent counsel's judgment is accorded significant weight and deference in approving FLSA settlements.

Second, the Settlement is fair and reasonable in light of the considerable risk posed to recovery. As discussed, whether BioReference was the "employer" of all Potential Collective Members would be a disputed factual issue. In addition, BioReference filed a motion to compel several opt-in plaintiffs to arbitrate their claims in individual arbitrations.

Approximately ¼ of the Potential Collective had executed similar arbitration agreements with class and collective action waivers.  Also, one named plaintiff and other putative collective action members signed Separation Agreements with BioReference containing a release of claims and a class and collective action waiver.  BioReference also opposed conditional certification.  If the court did grant conditional certification, defense counsel has indicated that BioReference would have later sought decertification on the grounds that the Plaintiffs' claims – especially their "off the clock" claims – did not emanate from a common policy of BioReference.

Third, the result here is reasonable in light of the range of damages that could be obtained.  Plaintiffs' counsel constructed a damages model based on their claims for (1) unpaid time on the first day of cruises, (2) unpaid "on call" time, and (3) "off the clock" time. The first component of this model was based on a standard amount of time, but this claim only implicated one working day per pay period.  Plaintiffs estimated that the claim for unpaid overtime attributable to the first day of cruises was approximately $750,000.  As discussed above, BioReference disputed whether this time was compensable at all, as well as the amount of time at issue.  The second and third components of Plaintiffs' model involved much more uncertain and variable amounts of time.  Plaintiffs estimated that damages for these categories could have been approximately $1,400,000.  Whether BioReference would be liable for liquidated damages would have been a contested issue.   Plaintiffs also pursued claims for failure to reimburse expenses or late reimbursement of expenses. These proved to also be very fact-specific issues and many of the plaintiffs worked in states that provided limited rights to recover for unreimbursed expenses.  (Sweeney Dec. ¶  18).  Accordingly, a

settlement for a total Maximum Settlement Amount of $1,600,000 is fair and reasonable. *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 462 (D.N.J. 2008) (that parties "insisted on vastly different methodologies for determining damages" favored settlement).

The proposed settlement is also fair and reasonable considering some of the unique aspects of this case. First, the Cruise Swabber and Team Lead jobs on Royal Caribbean Group cruise ships were short-term, temporary positions for many of the Potential Collective Members. Second, BioReference's contract to provide Cruise Swabbers and Team Leads to RCG ended in June 2022, so there are no current employees.

### 3. The Proposed Settlement "Furthers the FLSA's implementation"

Finally, the Settlement furthers the FLSA's purpose and implementation by providing relief to a large number of employees who might have had claims and, as discussed, the Settlement conforms to the FLSA's opt-in structure. Typically, indicia of a settlement that runs counter to the FLSA's purpose of protecting workers "include restrictive confidentiality clauses and overly broad release provisions." *Clarke*, 2020 U.S. Dist. LEXIS 26306 at *11; *see also Brumley*, 2012 US Dist. LEXIS 40599 at *2 (noting that settlements that place "constraints on employees beyond their full compensation under the FLSA" such as barring FLSA plaintiffs from informing fellow employees of the result obtained diminish the benefit to the plaintiffs and frustrate the FLSA's purpose); *Mabry v. Hildebrandt*, 2015 U.S. Dist. LEXIS 112137, *2-3 (E.D. Pa. Aug. 24, 2015) (rejecting confidentiality provision in a settlement of FLSA claims as "unnecessarily restrictive" and counter to the FLSA's purpose of correcting imbalances of power and information between employers and their employees).

Here, the Settlement Agreement does not contain any such restrictive confidentiality provision on the Plaintiffs nor the Potential Collective Members.  The releases here are, for the Potential Collective Members, properly tailored to the wage and hour claims asserted in the lawsuit.  While the release applicable to the nine named Plaintiffs is a general one, that is proper (and commonplace in employment cases) because they are seeking a service award for having stepped forward in this lawsuit.

### D.    The Court Should Approve the Expense and Fee Request

In the Settlement Agreement, the parties agreed that Plaintiffs would seek, and BioReference would not oppose, an award of fees up to 33% of the Maximum Settlement Amount of $1,600,000 and an additional amount for the actual litigation expenses incurred by Plaintiffs' counsel.  Plaintiffs' counsel incurred $11,226.09 in litigation related expenses (mediation fees, fees for a consulting expert on damages and fees for online research services). (Sweeney Dec. ¶ 27, Exhibit 3).

Plaintiffs' counsel seeks approval of a fee award of $533,280.  Each of Plaintiffs' thirty-seven clients in this matter agreed to retainer agreements that provide for a contingency fee of 33% of each individual's recovery.  (Sweeney Dec. ¶ 25).  *See Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, 2016 U.S. Dist. LEXIS 126893, at * 8-9 (N.D. Ill. Sept. 16, 2016) (approving 1/3rd fee request in FLSA opt-in settlement) and noting:

> In awarding attorneys' fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). District courts must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007). They must "do their best to recreate the market by considering factors such as actual fee contracts that were

privately negotiated for similar litigation, [and] information from other cases." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005)).

Numerous courts within the Third Circuit and this District have awarded fees equal to or exceeding 33% in wage and hour class and collective actions. *See, e.g., Goodman v. Burlington Coat Factory Warehouse Corp.*, No. 11-cv-04395-JHS-JS (D.N.J. June 10, 2020) (one third plus expenses); *Lucia v. McClain & Co.*, Civil Action No. 11-cv-930 (CCC-MF), 2015 U.S. Dist. LEXIS 164584 (D.N.J. Dec. 8, 2015) (42%); *Lovett v. Connect Am.com*, No. 14-2596, 2015 U.S. Dist. LEXIS 121838, at *14-15 (E.D. Pa. Sep. 11, 2015) (38.26%); *Rouse v. Comcast Corp.*, No. 14-1115, 2015 U.S. Dist. LEXIS 49347, at *29 (E.D. Pa. Apr. 14, 2015) (35%); *Creed v. Benco Dental Supply Co.*, No. 3:12- CV-01571, 2013 U.S. Dist. LEXIS 132911, at *17 (M.D. Pa. Sep. 17, 2013) (33 1/3%).[4]

These courts invoke the "percentage-of-recovery" method in determining attorneys' fee awards in common fund cases because it "directly aligns the interests of the class and its counsel" and because it incentivizes attorneys to create the largest common fund out of which payments to the class can be made. *Wal- Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (leading decision; internal citations omitted); *see also, In re Rite*

---

[4] District courts in this Circuit are afforded discretion in approving settlement awards and fees. *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975) (fee award left to "sound discretion" of district court); *Smith v. Daimlerchrysler Servs. N. Am., LLC*, 2005 U.S. Dist. LEXIS 25116, *3-4 (D.N.J. Oct. 19, 2005) (setting the amount of attorneys' fees and expenses "is within the discretion of the district court.").

*Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (approving percentage of the fund approach); *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001) (same).[5]

Plaintiffs' Counsel undertook this action entirely on a contingent fee basis, assuming a substantial risk that they might not be compensated at all for their efforts. (Sweeney Dec. ¶ 24). "Courts recognize the risk of non-payment as a factor in considering an award of attorneys' fees." *In re Datatec Sys. Sec. Litig.*, No. 04-CV-525 (GEB) 2007 U.S. Dist. LEXIS 87428, at *20 (D.N.J. Nov. 28, 2007).

Plaintiffs' counsel's lodestar confirms this fee request is entirely reasonable. To date, Plaintiffs' counsel has invested more than 750 hours in this litigation. (Sweeney Dec. ¶ 26). As stated above, in addition to working with thirty-seven clients and drafting a detailed Complaint and Amended Complaint, Plaintiffs' counsel briefed three significant motions. Plaintiffs' counsel also devoted a significant amount of time and resources to analyzing written discovery and data and prepared a detailed mediation statement. Through conclusion of the settlement, the lodestar will be in excess of $400,000.[6] If the court were to apply the lodestar approach as a cross-check on the percentage-of-recovery approach, Plaintiffs are seeking only a modest 1.33% multiplier, which is entirely reasonable. (Sweeney Dec. ¶ 28). Large multipliers are common in wage and hour litigation. *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 U.S.

---

[5] The American Law Institute's *Principles of Aggregate Litigation* states: "the percentage-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement." American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.13(b), (c) at 248-49 (2010).

[6] The hourly rates for Plaintiffs' counsel and the time devoted to prosecuting this case is further detailed in the Sweeney Dec. ¶¶ 26-27, Ex. 2).

Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012) (6.8 multiplier in FLSA wage and hour case); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (5.3 multiplier in FLSA wage and hour case and noting, "had this case not settled, class counsel's hours, and hence the lodestar figure, would almost certainly have been greater, although it is by no means certain that the class's recovery would also have been larger-indeed, given the vagaries of litigation and trial, it might have been lower. That, too, then, tends to show that the multiplier here is not so high as to raise any red flags over the size of the fee request."). As the court explained in *In re Mercedes-Benz Emissions Litigation*, No. 2:16-cv-881 (KM)(ESK), 2021 U.S. Dist. LEXIS 256167, at *51 (D.N.J. Aug. 2, 2021):

> Courts in this Circuit and elsewhere have approved large multipliers, when appropriate, in a range exceeding 10.  *See, e.g., In re Merry-Go-Round Enterprises, Inc., 244 B.R. 327* (Bankr. D. Md. 2000) (40% award for $71 million fund awarded, resulting in cross-check multiplier of 19.6); *Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.*, 2005 U.S. Dist. LEXIS 9705, 2005 WL 1213926 at *39-40, 60 (E.D. Pa. May 20, 2005) (multiplier of 15.6 and fee of 20% of $100M settlement where "no prior government investigation" or finding of civil or criminal liability existed); *New England Carpenters*, 2009 WL 2408560, at *2 (approving multiplier of 8.3 and 20% fee); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d at 736 n.44 (award of 25% of the $193 million fund, which amounted to $48 million and represented a multiplier of 4.5-8.5, which court described as "handsome but unquestionably reasonable"); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (25% of $126,800,000 fund awarded; multiplier of 6.96); *Weiss*, 899 F. Supp. at 1304 (fee resulted in multiplier of 9.3 times hourly rate).

E.    **The Court Should Approve the Service Awards**

The Settlement Agreement provides that Plaintiffs would seek, and BioReference would not oppose, Service Awards of $15,000 for Named Plaintiffs Rosenberg and Brown and $10,000 for the other seven Named Plaintiffs.  Named Plaintiffs Rosenberg and Brown participated in hours of initial interviews and provided valuable information about their experiences as Cruise Swabbers and Team Leads to Plaintiffs' counsel. They participated in multiple consultations to

allow Plaintiffs' Counsel to draft the initial Complaint.  All of the Named Plaintiffs devoted significant time to working with Plaintiffs' counsel to generally develop the factual background and to prepare detailed Declarations that were filed in support of Plaintiffs' Motion for Conditional Certification.  The Named Plaintiffs also worked with Plaintiffs' counsel to prepare for mediation. (Sweeney Dec. ¶¶ 19-21).

As a result of the Named Plaintiffs' willingness to bring this action, several hundred other Cruise Swabbers and Team Leads are eligible for settlement payments.  Service awards are generally appropriate for named plaintiffs.  *Somogyi v. Freedom Mortg. Corp.*, 2020 U.S. Dist. LEXIS 194035 at *26-27 (D.N.J. Oct. 20, 2020) (citing cases). Service awards are particularly appropriate in wage and hour cases because each Named Plaintiff here faced the risk of retaliation from within their industry by putting their name out there as Named Plaintiffs. As the Second Circuit explained in *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011): "an employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her FLSA rights."

The amount of the requested Service Awards is reasonable inasmuch as the law recognizes that it is appropriate to make awards in the range of $10,000 to $20,000 in recognition of the services that named plaintiffs perform.  *See*, *e.g.*, *Rivet v. Office Depot, Inc*., No. 12-cv-2992, Final Order & Judgment (D.N.J. Dec. 21, 2017) (FLSA case: $10,000 to each of five named plaintiffs); *In re Ins. Brokerage Antitrust Litig.*, Nos. 04-5184 (GEB), 05-1079 (GEB), 2007 U.S. Dist. LEXIS 74711, at *60-61 (D.N.J. Oct. 5, 2007) ($10,000 incentive award to each plaintiff, resulting in total payment of $250,000); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 347 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581, 588 (3d Cir. 1999) ($5,000 to $20,000 and enhancement

awards); *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 U.S. Dist. LEXIS 23976, at *19-20

(E.D. Pa. Dec. 1, 2004) ($20,000 enhancement award to each named plaintiff).

    **F.**    **The Court Should Approve the Settlement Administrator's Costs**

    Finally, the Court should approve the payment of $36,213.00, to RG2 Claims

Administration LLC ("RG2"). The parties agreed in the Settlement Agreement that the

Settlement Administrator will: (1) prepare, print, and disseminate to Potential Collective

Members the Notice Packet and postage prepaid Claim Form And Releases; (2) create and

maintain the electronic portal through which Potential Collective Members can complete and

submit Claim Form And Releases; (3) promptly and simultaneously copy counsel for all Parties

on material correspondence and promptly and simultaneously notify all counsel for the Parties

of any material requests or communications made by any Party; (4) promptly and

simultaneously furnish to counsel for the Parties copies of any written or electronic

communications from Potential Collective Action Members that the Administrator receives; (5)

calculate Settlement Awards for the Participating Plaintiffs and Potential Collective Action

Members in accordance with this Agreement; (6) receive Claim Form And Releases; (7) mail the

Settlement Checks to Participating Collective Member, (9) mail Court-approved Service Awards,

(10) mail or initiate a wire transfer of Court-approved Attorneys' Fees and Costs, and (11)

provide a final report detailing the results of the Claim Form And Release mailings and

participation to BioReference's Counsel and Plaintiffs' Counsel. RG2 is an experienced

administrator. The proposed fees to administer this settlement are reasonable and typical of

the cost to administer this type of settlement.

**CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant

Plaintiffs' Unopposed Motion for Approval of Collective Action Settlement Agreement and

Release and enter the accompanying proposed Order on Approval of Collective Action

Settlement and Judgment and the relief set forth therein.

Respectfully submitted,

Dated:   October 20, 2023
         New York, New York

_____
Nicholas Bittner
Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, NY 10004

nbittner@workingsolutionsnyc.com
*Attorney for Plaintiffs*